UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KINDER MORGAN, INC. and subsidiaries,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; OFFICE OF MANAGEMENT AND BUDGET; MICK MULVANEY, Director, Office of Management and Budget, in his official capacity; INTERNAL REVENUE SERVICE; and CHARLES P. RETTIG, Commissioner, Internal Revenue Service, in his official capacity,<br><br>Defendants. | Case No. 4:19-cv-03233<br><br>(Judge _____) |

## **COMPLAINT**

1.  Plaintiff Kinder Morgan paid alternative minimum taxes in some taxable years, a form of prepayment that entitled Kinder Morgan to corresponding amounts of refundable tax credits in future taxable years.  But when Kinder Morgan claimed its refundable tax credits on its 2016 and 2017 federal income tax returns, the United States *accepted* the returns and Kinder Morgan's calculations but gave back only *some* of the money Kinder Morgan had previously prepaid.  The government kept nearly $20 million of Kinder Morgan's refundable tax credits in the name of "sequestration."

2.  The law governing sequestration, 2 U.S.C. § 901, et seq., does not permit, let alone dictate, this result.  Congress enacted sequestration to enforce across-the-board, flat-rate cuts of affirmative government *spending*.  Sequestration applies to discretionary appropriations and direct government spending, but Kinder Morgan's refundable tax credits are neither.  Kinder Morgan's

refundable tax credits were a return of money the government had *held* but was never entitled to *keep*; refunding that money is neither government spending nor appropriations of any type.

3. Congress has charged the Office of Management and Budget ("OMB") with determining which federal accounts are actually subject to sequestration, and OMB wields its sequestration power in unprincipled ways. OMB and the Internal Revenue Service ("IRS") determined that sequestration applied to certain refundable tax credits (for which Kinder Morgan sought a refund on its 2016 and 2017 federal income tax returns), but without undertaking any rule-making procedures or indeed without giving any explanation at all.

4. Subsequently, however, OMB and the IRS determined not to apply sequestration to materially identical refundable tax credits, again without following any rule-making procedures or giving any explanation.

5. Those actions, and the IRS's act of withholding Kinder Morgan's sequestered credits, are contrary to law, arbitrary and capricious, and an abuse of discretion.

6. Kinder Morgan seeks the return of the improperly sequestered portion of its claimed (and allowed) tax refund on its 2016 and 2017 federal income tax returns.

**PARTIES**

7. Kinder Morgan, Inc. is a Delaware corporation with its principal place of business in Houston, Texas. Kinder Morgan is publicly traded on the New York Stock Exchange with the ticker symbol KMI. Kinder Morgan operates as an energy infrastructure company in North America that transports and stores natural gas, refined petroleum products, crude oil, carbon dioxide, and other products.

8. Kinder Morgan, Inc. is also the common parent of an affiliated group of corporations (collectively "Kinder Morgan") as defined in section 1504 of the Internal Revenue

Code of 1986.[1]  Kinder Morgan is authorized to bring this action on behalf of the entities included in the consolidated group.

9.  Defendant Mick Mulvaney is the Director of the Office of Management and Budget located in Washington, D.C.  He is being sued in his official capacity.

10.  Defendant Office of Management and Budget is an executive agency located in Washington, D.C.

11.  Defendant Charles P. Rettig is the Commissioner of the Internal Revenue Service located in Washington, D.C.  He is being sued in his official capacity.

12.  Defendant Internal Revenue Service is an executive agency of the United States located in Washington, D.C.

## JURISDICTION AND VENUE

13.  The Court has subject matter jurisdiction over this tax refund action under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422(a).  Under § 1346(a), "the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: (1) Any civil action against the United States for recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]"

14.  This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Administrative Procedure Act ("APA").  The Court is authorized to

---

[1] For taxable years 2016 and 2017, Kinder Morgan, Inc. (EIN 80-0682103) filed federal consolidated income tax returns on behalf of itself and its affiliated subsidiaries.  A list of the subsidiary corporations included in the relevant federal consolidated income tax returns is attached as Exhibits A and B.

award the requested declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the APA, 5 U.S.C. § 706.

15. Venue is appropriate under 28 U.S.C. §§ 1391(b)(2), 1391(e)(1), and 1402(a)(2) because Kinder Morgan's principal place of business is in this district.

## STATUTORY BACKGROUND:
## REFUNDABLE AMT TAX CREDITS UNDER § 168(K)(4)

16. The alternative minimum tax regime established by the Tax Reform Act of 1986 (26 U.S.C. § 1 et seq.) required corporations to calculate their tax liability in two ways: (1) based on the regular corporate income tax regime and (2) based on the statute's alternative minimum tax regime. A corporation was required to pay the alternative minimum tax, if higher, as a prepayment of taxes for future taxable years.

17. When a corporation paid the higher alternative minimum tax amount for a given year, the corporation received a tax credit to carry forward and use in future years. The tax credit was equal to the difference between the alternative minimum tax paid and the regular income tax the corporation would have otherwise owed. These "AMT tax credits" were not originally refundable.

18. The non-refundability of AMT tax credits caused a disparity among corporations entitled to them. A profitable corporation could use AMT tax credits to offset its tax liability, even reducing its tax liability to zero. A corporation experiencing a loss in a given year, however, would not have any tax liability against which to apply its AMT tax credits. Both corporations would have overpaid their taxes in a previous year due to the alternative minimum tax, and both corporations were therefore entitled to the same AMT tax credit in a future taxable year. But only the corporation with a present-year profit actually received the benefit of the statutory bargain's

AMT tax credit. A corporation with no income tax liability had no option but to carry forward the AMT tax credit to a future year.

19. Lawmakers came to see that the disparity made little sense; in fact, it was counterproductive in a stagnant economy. A corporation experiencing an unprofitable year was unlikely to have capital on hand to invest and grow its business. That corporation, however, would be likely to make immediate economic use of a tax refund, and doing so might help the corporation turn a profit sooner and provide more jobs than it otherwise would. Yet despite being entitled to receive its previous-year tax overpayments back as a credit, those overpayments remained in limbo and could only be used once the corporation became profitable again.

20. Senators George Voinovich of Ohio and Debbie Stabenow of Michigan, joined by a bipartisan group of cosponsors, crafted a solution: make the AMT tax credit refundable. In 2008, they proposed legislation to "help struggling companies and their employees during this time of economic downturn." 154 Cong. Rec. S 2402. Under their proposal, AMT tax credits could be refunded (rather than offset against tax owed) in lieu of bonus depreciation to which a corporation would otherwise have been entitled. The change would put corporations experiencing a loss on equal footing with presently-profitable ones in two ways. First, corporations with no taxable income could gain a benefit in exchange for their bonus depreciation, which was not otherwise currently valuable to them (having no taxable income from which to deduct it). Second, those same corporations would receive the benefit of their AMT tax credits *now*, rather than having to wait until a future, profitable year in which to offset the AMT tax credits against taxes owed.

21. Senators Voinovich and Stabenow said the change would "help unprofitable companies … to use existing AMT [alternative minimum tax] and R&D credits in 2008 to stimulate their businesses, turn profits, and create new jobs" by "allowing companies operating in

5

the red to use the AMT and R&D credits already on their books instead of bonus depreciation deductions, as long as the money is used to expand operations in the United States." *Id*. The Senators emphasized that the amendment was "fiscally responsible because it simply allows for the speedier use of tax credits *that would be used anyway in the future*." *Id*. (emphasis added).

22. Congress passed the legislation in 2008 as § 168(k)(4) of the Internal Revenue Code. PL 110-289 (The Housing Assistance Tax Act of 2008). Congress subsequently amended § 168(k)(4) several times to change certain details of its application. The version that applied to the 2016 and 2017 taxable years was enacted by the Protecting Americans from Tax Hikes Act of 2015 (PATH Act, P.L. 114-113).

23. Under the PATH Act, a corporation could choose to forgo available bonus depreciation for a taxable year and instead redeem 20% of the value of that bonus depreciation as a refundable tax credit. The total amount of the refundable tax credit for the taxable year was limited to 50% of the AMT tax credits the corporation had earned in previous years. Unredeemed AMT tax credits would continue to carry forward to future years. *Id*.

24. Refundable AMT tax credits under § 168(k)(4) are, as a matter of law, tax overpayments—no different than any other overpayment. 26 U.S.C. § 6401(b)(1) ("If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed …, the amount of such excess shall be considered an overpayment."). By law, the IRS is required to fully refund any overpayment after the overpayment is applied to a taxpayer's liability. 26 U.S.C. § 6402(a).

### STATUTORY BACKGROUND: SEQUESTRATION

25. In 2011, Congress enacted the Budget Control Act of 2011, which amended the Balanced Budget and Emergency Deficit Control Act of 1985, 2 U.S.C. § 901, et seq.) (altogether, the "Budget Act" or "Act").

26. The Budget Act provided that "discretionary appropriations and direct spending accounts shall be reduced" by a particular percentage to be calculated each year under the Act's formula, a practice commonly called "sequestration." 2 U.S.C. § 901a.

27. Refundable AMT tax credits under § 168(k)(4) are not discretionary appropriations or direct spending to which sequestration could apply.

28. More specifically, § 168(k)(4) tax credits are not "discretionary appropriations" because they are not *appropriated* by Congress at all; to the contrary, they are funds the IRS *refunds* to taxpayers. *See* 2 U.S.C. § 900(c)(7) (defining "discretionary appropriations" as "budgetary resources (except to fund direct-spending programs) provided in appropriation Acts.").

29. Nor are § 168(k)(4) credits "direct spending." *See* 2 U.S.C. § 900(c)(8) (defining "direct spending" as "(A) budget authority provided by law other than appropriation Acts; (B) entitlement authority; and (C) the Supplemental Nutrition Assistance Program"). Direct spending includes "budget authority," for which the Act borrows the definition from 2 U.S.C. § 622. Section 622 "budget authority" does not encompass tax credits like those in § 168(k)(4), *see* 2 U.S.C. § 622(2).

30. Section 168(k)(4) credits also are not "entitlement authority" under the Budget Act. "Entitlement authority" under the Budget Act is "the list of mandatory appropriations included in the joint explanatory statement of managers accompanying the conference report on the Balanced Budget Act of 1977." 2 U.S.C. § 900(17). That conference report does not list AMT tax credits as an entitlement, so for purposes of "entitlement authority" under the Budget Act, AMT tax credits do not qualify.

31. Sequestration began on March 1, 2013 and is still in effect today.

7

32. Each year, OMB calculates the sequestration amounts required under the Budget Act and reports the result to Congress. OMB also reports the discretionary appropriations and direct spending accounts to which sequestration will apply.

33. On February 9, 2016, OMB published its sequestration report to Congress for fiscal year 2017. *See* "OMB Report to the Congress on the Joint Committee Reductions for Fiscal Year 2017" (February 9, 2016), *available at* https://obamawhitehouse.archives.gov/sites/default/files/omb/assets/legislative_reports/sequestration/jc_sequestration_report_2017_house.pdf. OMB calculated that sequestration would require a 6.9 percent cut of "non-exempt nondefense mandatory programs" for fiscal year 2017.

34. In an appendix, OMB supplied a list of budget accounts subject to this sequestration percentage. Under the heading "Internal Revenue Service," OMB listed a "Sequester Percentage" of 6.9% for "Payment[s] Where Certain Tax Credits Exceed Liability for Corporate Tax." It is unclear whether OMB intended this description to encompass refundable AMT tax credits under § 168(k)(4).

35. OMB and the IRS did not otherwise explain why sequestration should apply to refundable AMT tax credits under § 168(k)(4).

36. OMB and the IRS engaged in no rule-making process when it determined that sequestration would apply to refundable AMT tax credits under § 168(k)(4).

37. The following year, on May 23, 2017 OMB published its sequestration report to Congress for fiscal year 2018. *See* "OMB Report to the Congress on the Joint Committee Reductions for Fiscal Year 2018" (May 23, 2017), *available at* https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/sequestration_reports/2018_jc_sequestration_report_may2017_potus.pdf.

8

38. In that report, OMB calculated that sequestration would require a 6.6 percent cut of "non-exempt nondefense mandatory programs" for fiscal year 2018.

39. In an appendix, OMB supplied a list of budget accounts subject to this sequestration percentage. Under the heading "Internal Revenue Service," OMB listed a "Sequester Percentage" of 6.6% for "Payment[s] Where Certain Tax Credits Exceed Liability for Corporate Tax." It is again unclear whether OMB intended this description to encompass § 168(k)(4) refundable AMT tax credits.

40. OMB and the IRS did not otherwise explain why sequestration should apply to refundable AMT tax credits under § 168(k)(4).

41. OMB and the IRS engaged in no rule-making process when it determined that sequestration would apply to refundable AMT tax credits under § 168(k)(4).

42. In December 2017, Congress repealed the corporate alternative minimum tax for taxable years beginning after December 31, 2017. Congress provided a phase-out process for AMT tax credits to permit corporations to receive a full refund of all the taxes they had prepaid as a result of the alternative minimum tax. Congress permitted corporations to use their remaining AMT tax credits to reduce their tax liability during the four taxable years from 2018–2021. *See* 26 U.S.C. § 53(e). Congress also determined that a portion of those remaining AMT tax credits would be refundable during taxable years 2018–2020, with one-hundred percent of a corporation's remaining AMT tax credits being refundable in 2021 (the last year that such tax credits will exist under current law). *See id.*

43. These remaining refundable AMT tax credits—which are indistinguishable from the AMT tax credits allowed under § 168(k)(4)—are called "section 53" credits.

44. Section 53 credits allow even a corporation experiencing four successive years of losses to recover 100% of its AMT tax credits by the end of the four-year phase-out period.

45. On March 28, 2018, the IRS posted an announcement on its website titled "Effect of Sequestration on the Alternative Minimum Tax Credit for Corporations." The announcement stated that "[p]ursuant to the requirements of the Balanced Budget and Emergency Deficit Control Act of 1985, as amended, refund payments issued to … corporations claiming refundable prior year minimum tax liability, are subject to sequestration."

46. This announcement specifically noted that sequestration applied to tax credits under *both* § 168(k)(4) and § 53. "Corporations claiming refundable credits under section 168(k) or 53 will be notified that a portion of their requested refund was sequestered."

47. On January 14, 2019, however, the IRS reversed course and posted a new announcement on its website titled "Effect of Sequestration on the Alternative Minimum Tax Credit for Corporations (fiscal year 2019)." The new announcement stated that "refund payments … due to refundable AMT tax credits under section 53(e) will *not* be subject to sequestration." (emphasis added)

48. Yet the IRS continued to maintain in the same announcement that sequestration *would* apply to § 168(k)(4) refundable AMT tax credits: "Corporations claiming refundable tax credits under section 168(k) will be notified that a portion of their requested refund was sequestered."

49. The OMB report for fiscal year 2019 again lists a "Sequester Percentage" for "Payment[s] Where Certain Tax Credits Exceed Liability for Corporate Tax." *See* "OMB Report to the Congress on the Joint Committee Reductions for Fiscal Year 2019" (February 12, 2018),

available at https://www.whitehouse.gov/wp-content/uploads/2018/02/Sequestration_Report_February_2018.pdf.

50. In that report, OMB calculated that sequestration would require a 6.2 percent cut of "non-exempt nondefense mandatory programs" for fiscal year 2019.

51. In an appendix, OMB supplied a list of budget accounts subject to this sequestration percentage. Under the heading "Internal Revenue Service," OMB listed a "Sequester Percentage" of 6.2% for "Payment[s] Where Certain Tax Credits Exceed Liability for Corporate Tax."

## FACTUAL BACKGROUND

*The IRS Sequesters Kinder Morgan's 2016 Tax Refund*

52. On July 13, 2017, Kinder Morgan filed its 2016 federal consolidated income tax return. Kinder Morgan carried forward $309,899,424 in AMT tax credits due to Kinder Morgan's payment of alternative minimum tax in previous taxable years.

53. In 2016, Kinder Morgan was entitled to sizeable bonus depreciation, but because Kinder Morgan operated at a loss during that year, it had no net taxable income and incurred no regular income tax liability against which to credit its large bonus depreciation allowances or its $309,899,424 in previously paid tax.

54. Instead, Kinder Morgan elected to accelerate its AMT tax credits under § 168(k) by foregoing the bonus depreciation to which it was otherwise entitled. This resulted in a § 168(k)(4) refundable AMT tax credit and overpayment of $154,949,712, which Kinder Morgan claimed on its 2016 tax return.

55. The IRS accepted and processed Kinder Morgan's 2016 tax return, allowing the $154,949,712 refund without dispute.

56. But on August 31 and September 1, 2017, the IRS paid Kinder Morgan a total tax refund of only $145,066,294.42. The IRS appeared to have reached that amount by sequestering

11

6.9% of Kinder Morgan's total tax refund—a loss to Kinder Morgan of $10,691,530.13. (The IRS had simultaneously credited $12,246.91 to a civil penalty and paid $820,359.46 of interest to Kinder Morgan because the IRS was late in issuing Kinder Morgan's tax refund.)  Kinder Morgan's 2016 tax transcript from the IRS reflects the interest payment as "interest credited to your account" but provides no explanation for the 6.9% overall reduction.  Nor has the IRS at any time issued an explanation for the 6.9% overall reduction.

*The IRS Sequesters Kinder Morgan's 2017 Tax Refund*

57.  On July 6, 2018, Kinder Morgan filed its 2017 federal consolidated income tax return.  Kinder Morgan carried forward $146,796,790 in AMT tax credits due to Kinder Morgan's payment of alternative minimum tax in previous taxable years.

58.   Again, Kinder Morgan was entitled to sizeable bonus depreciation on its 2017 return, but again, Kinder Morgan operated at a loss and had no net taxable income and income tax due against which to credit its bonus depreciation or AMT tax credits, respectively.  Kinder Morgan again elected to accelerate its AMT tax credits under § 168(k) by foregoing bonus depreciation to which it was otherwise entitled.  This resulted in a refundable § 168(k)(4) AMT tax credit and overpayment of $146,796,790, which Kinder Morgan claimed on its 2017 tax return.

59.  On October 5, 2018, the IRS sent a letter to Kinder Morgan, stating:

> We received your Form 1120 claiming the Form 8827, Credit for Prior Year Minimum Tax Corporations, for the above tax period.  This is to inform you of the reduction to your claim based on the following: Pursuant to the requirements of the Balanced Budget and Emergency Deficit Control Act of 1985, as amended, certain automatic reductions take place as of March 1, 2013.  These required reductions include a reduction to the refundable portion of the Form 8827 Credit.  As a result, the refundable portion of your claim $146,796,790.00 was reduced by 6.6%.  The sequestration reduction rate will be applied until the end of the fiscal year September 30, 2018 or intervening Congressional action, at which time the sequestration rate is subject to change.

12

60. On October 19, 2018, the IRS paid Kinder Morgan a tax refund of $137,108,201.86, which was $9,688,588.14 less than the allowed amount of Kinder Morgan's tax refund. The difference is 6.6% (the 2018 sequestration percentage) of Kinder Morgan's total allowed tax refund.

61. When Kinder Morgan filed its 2017 tax return, the IRS had announced it would apply sequestration to *both* § 168(k)(4) and § 53(e) credits. Kinder Morgan chose to take its AMT tax credits under § 168(k)(4) rather than hold those credits to redeem under § 53(e) in a future year. By law, Kinder Morgan cannot revoke its decision to redeem credits under § 168(k)(4) except with IRS consent.

62. The IRS sequestered Kinder Morgan's § 168(k) refundable AMT tax credits claimed on its 2017 tax return, reducing Kinder Morgan's refund by $9,688,588.14.

63. Because the IRS reversed itself after Kinder Morgan filed its 2017 return, Kinder Morgan could have avoided that near-$10 million loss by waiting to claim its refundable AMT tax credits under § 53(e) during 2018 or subsequent years.

## COUNT ONE

**(Civil Action Against The United States For Federal Income Tax Refund For The 2016 Taxable Year (26 U.S.C. § 7422))**

64. Kinder Morgan incorporates by reference the allegations contained in paragraphs 1-63 above.

65. Count One applies only to the United States as defendant.

66. Kinder Morgan timely filed its 2016 federal income tax return.

67. Kinder Morgan's 2016 federal income tax return properly claimed an overpayment and tax refund of $154,949,712.00, as calculated on Form 8827, "Credit for Prior Year Minimum Tax - Corporations."

68. The refund Kinder Morgan requested consists of alternative minimum taxes that were previously paid by Kinder Morgan and that are refundable.

69. The IRS allowed a refund of $154,949,712.00.

70. The IRS then failed to fully refund Kinder Morgan's allowed tax refund, reducing it by $10,691,530.13.

71. Because the IRS applied sequestration to Kinder Morgan's tax refund, the IRS erroneously and illegally refused to refund Kinder Morgan $10,691,530.13 to which it was entitled as a matter of law.

72. By refusing to pay Kinder Morgan's entire refund, the United States now owes Kinder Morgan $10,691,530.13, plus interest.

73. The IRS has no appeals process for challenging the application of sequestration.

74. Kinder Morgan has timely filed this Complaint to receive a full income tax refund for the 2016 taxable year.

75. Kinder Morgan is the sole owner of the 2016 tax refund owed to it.

76. Kinder Morgan has no related claims pending elsewhere.

## COUNT TWO

**(Civil Action Against The United States For Federal Income Tax Refund For The 2017 Taxable Year (26 U.S.C. § 7422))**

77. Kinder Morgan incorporates by reference the allegations contained in paragraphs 1-76 above.

78. Count Two applies only to the United States as defendant.

79. Kinder Morgan timely filed its 2017 federal income tax return.

80. Kinder Morgan's 2017 federal income tax return properly claimed an overpayment and tax refund of $146,796,790.00, as calculated on Form 8827, "Credit for Prior Year Minimum Tax - Corporations."

81. The refund Kinder Morgan requested consists of alternative minimum taxes that were previously paid by Kinder Morgan and that are refundable.

82. The IRS allowed a refund of $146,796,790.00.

83. The IRS then failed to fully refund Kinder Morgan's allowed tax refund, reducing it by $9,688,588.14.

84. Because the IRS applied sequestration to Kinder Morgan's tax refund, the IRS erroneously and illegally refused to refund Kinder Morgan $9,688,588.14, to which it was entitled as a matter of law.

85. By refusing to pay Kinder Morgan's entire refund, the United States now owes Kinder Morgan $9,688,588.14, plus interest.

86. The IRS has no appeals process for challenging the application of sequestration.

87. Kinder Morgan has timely filed this Complaint to receive a full income tax refund for the 2017 taxable year.

88. Kinder Morgan is the sole owner of the 2017 tax refund owed to it.

89. Kinder Morgan has no related claims pending elsewhere.

### COUNT THREE
### (Substantive Violation Of The Administrative Procedure Act Through Violations Of Balanced Budget And Emergency Deficit Control Act Of 1985, And Arbitrary And Capricious Agency Action)

90. Kinder Morgan incorporates by reference the allegations contained in paragraphs 1-89 above.

91. Claim Three applies to all defendants.

92. The Administrative Procedure Act requires courts to hold unlawful and set aside any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §§ 706(2)(A), (B).

93. By ordering sequestration of refundable tax credits, such as those under § 168(k)(4), Defendants have acted contrary to the Internal Revenue Code, 26 U.S.C. § 1 et seq., and the Balanced Budget and Emergency Deficit Control Act of 1985, as amended, 2 U.S.C. § 901 et seq., and exceeded their statutory authority.

94. Defendants acted arbitrarily and capriciously in ordering sequestration of refundable AMT tax credits under § 168(k)(4). Among other arbitrary and capricious actions, Defendants have offered no explanation for the decision to sequester refundable tax credits such as those under § 168(k)(4).

95. Defendants also acted arbitrarily and capriciously by treating two materially identical tax credits differently (refundable AMT tax credits under 26 U.S.C. §§ 53 and 168(k)(4)). Despite sequestering refundable AMT tax credits under 26 U.S.C. § 168(k)(4), Defendants have chosen not to sequester refundable AMT tax credits under 26 U.S.C. § 53. Defendants have offered no explanation for this differing treatment of materially identical refundable tax credits.

96. Through these actions, Defendants have violated the substantive requirements of the APA. 5 U.S.C. §§ 706(2)(A), (C). Defendants' violations of the APA and their disparate treatment of refundable tax credits under § 168(k)(4) and § 53(e) are inflicting ongoing and competitive harm on Kinder Morgan.

## COUNT FOUR
## (Procedural Violation of the Administrative Procedure Act)

97.     Kinder Morgan incorporates by reference the allegations contained in paragraphs 1-96 above.

98.     Claim Four applies to all defendants.

99.     The Administrative Procedure Act requires courts to hold unlawful and set aside agency action taken "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

100.    The IRS and OMB are "agencies" governed by the APA.  5 U.S.C. § 551(1).

101.    The APA requires that agencies follow rulemaking procedures before engaging in an action that affects substantive rights.  5 U.S.C. § 553.

102.    In deciding to sequester refundable AMT tax credits, which the law treats as tax overpayments, the IRS and OMB made the prospective decision to withhold funds to which taxpayers would otherwise be entitled and which the IRS otherwise could refund.  This, among other actions by Defendants, affects substantive rights.

103.    Defendants did not follow rulemaking procedures required by the APA when deciding refundable AMT tax credits are subject to sequestration.

104.    Through their actions, Defendants have violated the procedural requirements of the APA.  These procedural violations are inflicting ongoing harm on Kinder Morgan.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Kinder Morgan demands trial by jury in this action of all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Kinder Morgan respectfully requests that the Court enter judgment in its favor and provide the following relief:

1. Pursuant to 26 U.S.C. § 7422, a full refund, without sequestration, of the § 168(k) refundable AMT tax credits Kinder Morgan claimed on its 2016 and 2017 federal income tax returns, totaling $20,380,118.27, plus statutory interest as required by law;

2. Pre- and post-judgment interest as provided by law;

3. A judgment declaring that refundable AMT tax credits such as those allowed by 26 U.S.C. § 168(k) are not subject to sequestration under the Balanced Budget and Emergency Deficit Control Act of 1985, as amended;

4. An injunction that prevents Defendants from sequestering such refundable tax credits under the Balanced Budget and Emergency Deficit Control Act of 1985, as amended;

5. An award of attorneys' fees and court costs; and

6. Any other equitable and legal relief that this Court may deem just and proper.

Dated:  August 27, 2019                                   Respectfully submitted,

/s/ *Anna G. Rotman*
Anna G. Rotman, P.C.
*Attorney in Charge*
(Texas Bar #24046761)
(Southern District of Texas Bar #627249)
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX  77002
Telephone: (713) 836-3750
Fascimile: (713) 836-3601
anna.rotman@kirkland.com

John C. O'Quinn, P.C.*
Jason Wilcox*
Megan Wold*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
john.oquinn@kirkland.com
jason.wilcox@kirkland.com
megan.wold@kirkland.com

*Attorneys for Kinder Morgan, Inc.*

\* *Pro hac vice* motions forthcoming

19